2006 UT 2

**B.A.M. DEVELOPMENT, L.L.C., a Utah limited liability company, Plaintiff, Respondent, and Cross–Petitioner,**

v.

**SALT LAKE COUNTY, a body politic and a political subdivision of the State of Utah, Defendant, Petitioner, and Cross– Respondent.**

Nos. 20040365, 20040373.

Supreme Court of Utah.

Jan. 10, 2006.

()

Stephen G. Homer, West Jordan, for respondent.

Donald H. Hansen, David E. Yocom, Salt Lake City, for petitioner.

Craig M. Call, Salt Lake City, for amicus Department of Natural Resources.

## AMENDED OPINION

On Certiorari to the Utah Court of Appeals

NEHRING, Justice:

### INTRODUCTION

¶ 1 In this land-use dispute, Salt Lake County sought to exercise its police power to require B.A.M. Development, L.L.C., to dedicate property for the purpose of widening a major traffic artery adjacent to a residential subdivision from which B.A.M. sought County approval to build. The court of appeals held that the process used to review the propriety of the County's land dedication requirements before both the Salt Lake County Board of Commissioners and the trial court was flawed. It reversed the trial court and remanded to remedy the errors. The court of appeals also mandated that the review on remand be conducted using the standards embodied in what has come to be known as the *Nollan/Dolan* or "rough proportionality" test.

¶ 2 We granted certiorari to examine whether the court of appeals correctly determined that the *Nollan/Dolan* test is the proper tool to measure the lawfulness of the dedication of B.A.M.'s property to the County. We affirm.

¶ 3 We also granted certiorari to review two procedural issues, both of which are made moot by Senate Bill 60, which amended

Utah Code section 17–27a–801, effective May 2, 2005, and details proper district court review of a county's land-use decision. This section operates retroactively because these two issues are procedural in nature.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

¶ 4 Salt Lake County Ordinance 15.28.010 requires developers of land to dedicate property to the County to improve public streets that abut the proposed development. Salt Lake County has adopted a Transportation Master Plan to anticipate and prepare for the long-term highway capacity needs of Salt Lake County. The requirements imposed on developers under the Ordinance are directly tied to the elements of the Transportation Master Plan. In the parlance of takings clause jurisprudence, a mandate like that created by the County's ordinance is a "development exaction." We have defined development exactions as "contributions to a governmental entity imposed as a condition precedent to approving the developer's project." *Salt Lake County v. Bd. of Educ.*, 808 P.2d 1056, 1058 (Utah 1991) (internal quotation marks and citations omitted).

¶ 5 B.A.M. Development, a Utah limited liability company, requested and received preliminary approval from the Salt Lake County Planning and Zoning Commission to develop a residential subdivision on fifteen acres of land located at 7755 West and 3500 South in Salt Lake County, Utah. In its original proposed subdivision plat, B.A.M. agreed, as a condition of development approval, to set aside a forty-foot-wide strip of land for the future widening of 3500 South. One year later, Salt Lake County informed B.A.M. that, after consulting with the Utah Department of Transportation, it had concluded that the Transportation Master Plan

contemplated the eventual widening of 3500 South to fifty-three feet at the site of B.A.M.'s subdivision. Based on this information, the County revised the conditions imposed on B.A.M. to approve its development to include the requirement that B.A.M. dedicate an additional thirteen feet of its property to the County.

¶ 6 B.A.M. objected to this additional demand because the increased dedication would require reconfiguration of the subdivision resulting in further development expense. The planning and zoning commission turned away B.A.M.'s objection without receiving evidence and continued to condition B.A.M.'s license to build the subdivision on dedication of the fifty-three-foot parcel for road expansion.

¶ 7 B.A.M. appealed the planning and zoning commission's decision to the Salt Lake County Board of Commissioners. It contended that the County's demand for the additional thirteen feet of property amounted to an unconstitutional taking.[2] B.A.M. requested that the Board find that the "uncompensated dedication and improvement of the additional roadway constitute[d] an unconstitutional 'taking,' not reasonably justified by the actual impact created by the proposed development." The Board conducted no hearing on B.A.M.'s appeal, nor did it take evidence or issue legal or factual findings. It nevertheless affirmed the Commission's decision that the additional thirteen-foot strip was a lawful exercise of the County's police power and not a taking.

¶ 8 Dissatisfied with this outcome, B.A.M. filed a complaint in district court. In B.A.M.'s view, the dedication should have been tested under the more demanding "rough proportionality" standard created by the United States Supreme Court to assess whether a property exaction imposed by a

1. All factual and procedural history is taken from *B.A.M. v. Salt Lake County*, 2004 UT App 34, ¶¶ 2–4, 27–34, 87 P.3d 710.

2. The court of appeals majority concluded that B.A.M. had preserved for appeal only its objection to the County's claim to the additional thirteen feet of its property. In doing so, it affirmed the trial court's conclusion that B.A.M. had never objected to the initial forty-foot exaction in its administrative appeals before the planning and

zoning commission or the Board. Judge Orme dissented from this view, believing that in light of the undeveloped state of the record the court of appeals should interpret more generously B.A.M.'s contentions that it had properly challenged the entire scope of the County's proposed property exaction. We did not grant certiorari on this question, however, and therefore limit our review to the thirteen-foot supplemental exaction.

government as a condition to authorizing a property owner's desired use of land amounted to a regulatory restriction on the use of its land that required no compensation, or amounted to a taking for which B.A.M. was entitled to compensation. *Dolan v. City of Tigard,* 512 U.S. 374, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994); *Nollan v. Cal. Coastal Comm'n,* 483 U.S. 825, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987).

¶ 9 The district court refused to apply the rough proportionality test. It reasoned that because the mandated dedication of property was made pursuant to an ordinance of general application, it fell outside the ambit of the rough proportionality test which, it concluded, applied only to "adjudicative" exactions that by their nature carried the risk of extortionate governmental conduct. The district court then affirmed the Board's conclusion that the thirteen-foot strip was not a taking. B.A.M. appealed to the Utah Court of Appeals.

¶ 10 The court of appeals' majority addressed two issues: whether the district court erred when it heard evidence on B.A.M.'s appeal and whether the thirteen-foot exaction was a taking.

¶ 11 Viewing the first issue as one of statutory interpretation, the court of appeals held that the district court was limited to reviewing the record made before the County—there was none—and erred when it took evidence. Based on this procedural defect, and because without the district court record there was no record at all to explain the basis for the denials of B.A.M.'s objections, the court of appeals remanded the matter to the district court. The court of appeals instructed the district court to find that the Board had acted arbitrarily and capriciously when it failed to hear B.A.M.'s appeal and to direct the appropriate county agency to grant B.A.M. an administrative hearing on its claim that the County's exaction was an unconstitutional taking.

¶ 12 As the discussion that follows will explain more fully, statutory modifications to the procedures governing judicial review of administrative land-use decisions enacted after we granted certiorari have displaced the court of appeals analysis and holding on the procedural issue.

¶ 13 The court of appeals also held that on remand the reviewing agency must apply the rough proportionality test. The court of appeals majority appeared to conclude that its determination that the County had imposed a development exaction on B.A.M. was sufficient reason to apply the rough proportionality test. Although Judge Orme's dissent would also have mandated application of the rough proportionality test, he correctly noted that it was by no means clear that the rough proportionality test must be applied to every development exaction. *Nollan* and *Dolan* did not satisfactorily define the class of exactions that would be subject to rough proportionality scrutiny. Within the general category of exactions, some, like zoning and other traditional land-use regulations, would not be required to undergo rough proportionality review. As the *Dolan* court explained:

> Th[ose] sort of land use regulations ... however, differ in two relevant particulars from the present case. First, they involved essentially legislative determinations classifying entire areas of the city, whereas here the city made an adjudicative decision to condition petitioner's application for a building permit on an individual parcel. Second, the conditions imposed were not simply a limitation on the use petitioner might make of her own parcel, but a requirement that she deed portions of the property to the city.

512 U.S. at 385, 114 S.Ct. 2309.

¶ 14 At the time we granted certiorari, we had not had occasion to establish whether the rough proportionality test should be applied to all development exactions or just to those that are imposed through an adjudicative decision. As we shall see, just as legislative action undertaken after we granted certiorari shapes the outcome of the procedural issues we consented to take up on certiorari review, so the enactment of a statute making the rough proportionality test applicable to exactions generally influences substantially our answer to the question of whether the test should be applied here.

¶ 15 When reviewing cases under certiorari jurisdiction, we apply a standard of correctness to the decision made by the court of appeals rather than the trial court. *Brigham City v. Stuart*, 2005 UT 13, ¶ 7, 122 P.3d 506 (Utah 2005).

## ANALYSIS

¶ 16 Two procedural issues are before us for review: (1) whether the district court was limited to review of the administrative record; and (2) whether section 63–90a–4 of the Utah Code permits review regardless of the state of the administrative record. We conclude that both are answered by the text of Utah Code section 17–27a–801 (Supp.2005), which was enacted after we granted certiorari.

## I. RETROACTIVE APPLICATION OF SECTION 17–27a–801 SUPPORTS THE DISTRICT COURT'S DECISION TO TAKE ADDITIONAL EVIDENCE

¶ 17 The court of appeals majority concluded that under Utah Code section 17–27–1001(3)(a), the district court was limited to determining whether the Board had acted arbitrarily or capriciously in denying B.A.M.'s takings claim based on the administrative record, even where there was none. At that time, section 17–27–1001(3) read:

(3) (a) The [district] court shall:

(i) presume that land use decisions and regulations are valid; and

(ii) *determine only whether or not the decision is arbitrary, capricious, or illegal.*

Utah Code Ann. § 17–27–1001(3)(a) (2001) (emphasis added).

¶ 18 However, when B.A.M. appealed the Board's decision to the district court, the court chose to take evidence. Its decision to do so was understandable since without doing so the court would have no information upon which to base its conclusion as to the arbitrary, capricious, or illegal nature of the action. Grounded, however, in a plain language parsing of section 1001(3)(a), the court of appeals concluded that the district court exceeded its discretion by taking evidence. This result, albeit based on a defensible reading of the statute's text, required the court of appeals to remand the case back to the district court for a determination as to which appropriate body should review the case.

¶ 19 This procedural quandary has since been resolved by Utah Code section 17–27a–801, passed by the Utah Legislature in 2005. Section 17–27a–801 gives clear direction to a district court reviewing a land-use decision that "[i]f there is no record, the [district] court may call witnesses and take evidence." This law became effective on May 2, 2005, well after B.A.M. went through the channels of legal review to arrive at this court. However, based on this court's jurisprudence regarding retroactive application of legislation, we conclude that section 17–27a–801 applies retroactively to B.A.M.'s appeal from the Board's decision.

¶ 20 Generally, legislation is not given retroactive effect. Utah Code section 68–3–3 codifies this principle, stating that "no part of these revised statutes is retroactive, unless expressly so stated." Utah Code Ann. § 68–3–3 (2004). In addition, we recently stated that "as a general rule, 'retroactivity is not favored in the law.'" *Goebel v. Salt Lake City S. R.R. Co.*, 2004 UT 80, ¶ 39, 104 P.3d 1185 (quoting *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988)). However, as we made clear in *Goebel*, the rule against retroactivity applies only where a statute implicates substantive laws. By contrast, "statutes that do not 'enlarge, eliminate, or destroy' substantive rights can be applied retroactively." *Id.* (quoting *Moore v. Am. Coal Co.*, 737 P.2d 989, 990 (Utah 1987)).

¶ 21 In this case, the retroactive application of section 17–27a–801 does not "enlarge, eliminate or destroy" substantive rights. *Id.* Rather, the statute endeavors to improve the quality and integrity of judicial review of land-use decisions. It is a statute aimed at discovering, evaluating, and preserving substantive rights by improving judicial procedures. Thus, it is a statute that may be applied retroactively. We therefore conclude that the district court did not exceed its discretion by taking evidence on B.A.M.'s

appeal. We next turn to the second procedural issue that we consented to review.

## II. APPLICATION OF SECTION 63–90a–4 SUPPORTS THE DISTRICT COURT'S DECISION TO RECEIVE EVIDENCE

¶ 22 Section 63–90a–4 describes the appeals process for challenges to alleged takings. It reads:

(1) Each political subdivision shall enact an ordinance that:

(a) establishes a procedure for review of actions that may have constitutional taking issues; and

(b) meets the requirements of this section.

(2) (a)(i) Any owner of private property whose interest in the property is subject to a physical taking or exaction by a political subdivision may appeal the political subdivision's decision within 30 days after the decision is made.

(ii) The legislative body of the political subdivision, or an individual or body designated by them, shall hear and approve or reject the appeal within 14 days after it is submitted.

(iii) If the legislative body of the political subdivision fails to hear and decide the appeal within 14 days, the decision is presumed to be approved.

(b) The private property owner need not file the appeal authorized by this section before bringing an action in any court to adjudicate claims that are eligible for appeal.

(c) A property owner's failure to appeal the action of a political subdivision does not constitute, and may not be interpreted as constituting, a failure to exhaust available administrative remedies or as a bar to bringing legal action.

Utah Code Ann. § 63–90a–4 (2004).

¶ 23 B.A.M. argues that because section 63–90a–4 permits a property owner to bypass all administrative appeals and seek judicial review of an adverse land-use decision, it must logically supersede an interpretation of section 17–27–1001 that would bar a district court from taking evidence when judicial review is sought after a property owner has pursued administrative relief.

¶ 24 The County concedes this point, but insists that we should not review this issue because B.A.M. did not preserve it. Our order granting certiorari expressly designated the possible application of section 63–90a–4 to B.A.M.'s land-use appeal as an issue that we would take up. While it may be possible to imagine circumstances under which we might reconsider a grant of certiorari on an issue we later conclude was not properly preserved, that is not the case here, and we take up the issue on its merits.

¶ 25 Whatever those merits may have been at the time we granted certiorari, they have been overtaken by the enactment of Utah Code section 17–27a–801 and its unambiguous grant of authority to district courts to take evidence in land-use appeals. This provision complements section 63–90a–4 and eliminates the conflict that may have existed between section 63–90a–4 and section 17–27–1001.

¶ 26 We therefore reverse the court of appeals' holding that the district court erred when it received evidence.

¶ 27 We turn now to the final issue upon which we granted certiorari review: whether the *Nollan/Dolan* heightened-scrutiny rough proportionality test applies where an alleged taking results from a uniform land-use scheme rather than an ad hoc site-specific adjudicative decision.

## III. THE DOLAN ROUGH PROPORTIONALITY TEST APPLIES TO THE REQUIRED DEVELOPMENT EXACTION

¶ 28 When we granted certiorari in this matter, the question of whether the *Nollan/Dolan* rough proportionality test applies to a development exaction that results from a uniform land-use scheme rather than an ad hoc site-specific adjudicative decision was one of first impression. Once again, however, the legislature has intervened by codifying the policy decision to require rough proportionality treatment of all development exactions, both those emanating from the application of uniform land-use pro-

visions like Ordinance 15.28.010 and from individual adjudicative decisions. Utah Code Ann. § 17–27a–507 (Supp.2005). Effective in May 2005, the statutory iteration of the rough proportionality test states:

A county may impose an exaction or exactions on development proposed in a land use application provided that:

(1) an essential link exists between a legitimate governmental interest and each exaction; and

(2) each exaction is roughly proportionate, both in nature and extent, to the impact of the proposed development.

*Id.*

¶ 29 With the enactment of this statute, our first impression resolution of the question before us is likely to be our last. The legislature has acted to define the scope of the rough proportionality test for exactions imposed after May 2005. Because the degree of scrutiny applied to a development exaction affects directly whether a governmental entity will have an obligation to pay compensation for the exaction, section 17–27a–507 implicates substantive rights and is, therefore, not eligible to be applied retroactively.

¶ 30 Although section 17–27a–507 is not available for retroactive application to this case, it is nevertheless pivotal in our analysis. We begin this analysis, however, by providing a brief review of the genesis of the rough proportionality test to better understand the contours of the debate over its application that continues in jurisdictions that, unlike Utah, have not achieved resolution through statutory enactments.[3]

¶ 31 The Fifth Amendment guarantees that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V. This promise binds the states through the Fourteenth Amendment. *Chicago, Burlington & Quincy R.R. Co. v. Chicago*, 166 U.S. 226, 234, 17 S.Ct. 581, 41 L.Ed. 979 (1897). The Utah Constitution reinforces the protection of private property against uncompensated gov-

ernmental takings in article I, section 22. Utah Const. art. I, § 22.

¶ 32 Two categories of takings are the progenitors of development extractions: physical takings and regulatory takings. The United States Supreme Court has fashioned markedly different analytical formulas for each. As its name implies, a physical taking occurs when a governmental entity physically invades or occupies private property as a result of which the property is made available for use by others. *Nollan v. Cal. Coastal Comm'n*, 483 U.S. 825, 831–32, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987). Physical takings without just compensation are unconstitutional "without regard to whether the action achieves an important public benefit or has only minimal economic impact on the owner." *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 434–35, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982).

¶ 33 Regulatory takings, by contrast, occur when a governmental entity intrudes to limit the use of private property while not physically seizing it. *Yee v. City of Escondido*, 503 U.S. 519, 532, 539, 112 S.Ct. 1522, 118 L.Ed.2d 153 (1992). As we noted earlier, zoning regulations are a typical form of regulatory taking. Unlike physical takings, regulatory takings do not always trigger an obligation to compensate the property owner. The Supreme Court has assigned no set formula to determine whether a regulatory taking is unconstitutional. *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1015, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992). Although there is no set formula, the Court has "examined the taking question by engaging in essentially ad hoc, factual inquiries that have identified several factors—such as economic impact of the regulation, its interference with reasonable investment-backed expectations, and the character of the government action." *MacDonald, Sommer & Frates v. Yolo County*, 477 U.S. 340, 349, 106 S.Ct. 2561, 91 L.Ed.2d 285 (1986) (internal quotation and citation omitted). Each regulatory taking stands on its own and must be

---

3. An ably rendered and more comprehensive summary of takings jurisprudence is incorporated within Judge Orme's dissent in the court of appeals' decision. *B.A.M.*, 2004 UT App 34, ¶¶ 35–43, 87 P.3d 710.

examined individually to determine whether the regulation is "so onerous that its effect is tantamount to a direct appropriation or ouster." *Lingle v. Chevron*, U.S.A. Inc., 544 U.S. 528, 125 S.Ct. 2074, 2081, 161 L.Ed.2d 876 (2005).

¶ 34 Development exactions are the progeny of physical and regulatory takings. As such, they share certain features of each form of taking, but, like any offspring, struggle to fashion their own identity. Exactions are conditions imposed by governmental entities on developers for the issuance of a building permit or subdivision plat approval. *Salt Lake County v. Bd. of Educ.*, 808 P.2d 1056, 1058 (Utah 1991). They may "serve more than a single development" and "may take the form of: (1) mandatory dedication of land for roads, schools or parks, as a condition to plat approval, (2) fees-in-lieu of mandatory dedication, (3) water or sewage connection fees, and (4) impact fees." *Id.* (citations omitted). In these respects, exactions take on the likeness of regulatory takings. By contrast, exactions resemble physical takings in the sense that they typically require the permanent surrender of private property for public use.

¶ 35 The task of deciding how to gauge whether a particular exaction has inherited more features from its physical or regulatory takings progenitor and thus, whether an exaction is an unconstitutional taking, was undertaken by the Supreme Court in *Nollan* and *Dolan*. A brief retelling of these cases will bring us to the creation of the rough proportionality test and provide context for the perplexing "legislative/adjudicative" application dichotomy that the rough proportionality test spawned.

¶ 36 The Nollans wanted to rebuild their beach house. *Nollan*, 483 U.S. at 828–29, 107 S.Ct. 3141. They obtained agency approval for the project conditioned on their dedication of a public easement across their beach to permit the public to pass between two public beaches that flanked the Nollans' property. *Id.* The Court invalidated the dedication. *Id.* at 841, 107 S.Ct. 3141. The Court found the agency's interest in preserving the public's visual access to the beach to be legitimate and conceded that the presence of the Nollans' rebuilt dwelling would impair visual access and create a "psychological barrier" to public use of the beach. *Id.* at 838, 107 S.Ct. 3141. The easement was, however, unrelated to the legitimate interests of the agency. *Id.* at 837, 107 S.Ct. 3141. It did not have anything to do either with visual access or with overcoming any psychological barrier created by the loss of visual access. *Id.* The exaction failed, therefore, because it could not claim an " 'essential nexus'... between the 'legitimate state interest' and the permit condition exacted by the [agency]." *Dolan v. City of Tigard*, 512 U.S. 374, 386, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994) (quoting *Nollan*, 483 U.S. at 837, 107 S.Ct. 3141) (explaining the *Nollan* test and its application in *Dolan* ).

¶ 37 The *Nollan* "essential nexus" test established a middle ground between the lenient standard employed to assess pure regulatory takings and the rigorous per se takings treatment of physical takings. There remained unanswered, however, the question of how much a governmental entity could constitutionally require a developer to forfeit in relationship to the impact the developers proposed use would have on the governmental interest that justified the exaction. The Supreme Court answered this question in *Dolan*. 512 U.S. 374, 114 S.Ct. 2309, 129 L.Ed.2d 304.

¶ 38 Ms. Dolan applied for a building permit to expand her plumbing and electrical supply store and to pave the parking lot. *Id.* at 379, 114 S.Ct. 2309. The city conditioned the issuance of the permit on the dedication of both a fifteen-foot strip of land, to be used as a bicycle and pedestrian path, and an additional parcel located within the flood plain to be used as a "greenway." *Id.* at 379–80, 114 S.Ct. 2309. The city justified the pathway dedication by citing evidence that the expanded store would increase traffic and defended the "greenway" parcel as a legitimate method to mitigate the increased water flow to an adjacent creek that would be generated by the paved parking lot. *Id.* at 381–82, 114 S.Ct. 2309.

¶ 39 The Supreme Court had no difficulty agreeing that the city's conditions satisfied the *Nollan* "essential nexus" standard. *Id.* at 389, 114 S.Ct. 2309. It then turned its

attention to measuring the scope of the exactions against the impact of Ms. Dolan's project. The standard of measure adopted by the Supreme Court was rough proportionality. *Id.* at 389–91, 114 S.Ct. 2309. Its elements included the imposition of a burden on the governmental entity to make "some sort of individualized determination that the required dedication is related both in nature and extent to the impact of the proposed development." *Id.* at 391, 114 S.Ct. 2309. The city's proposed exactions of Ms. Dolan's property failed the test. *Id.* at 388–95, 114 S.Ct. 2309. The Supreme Court concluded that while the city's interest in mitigating water flow was a legitimate governmental interest, it could be adequately realized by restricting Ms. Dolan's use of her property rather than by requiring her to dedicate it to public use. *Id.* at 392–93, 114 S.Ct. 2309. Similarly, the Supreme Court rejected the city's contention that the pathway would offset traffic demand as too speculative to warrant a surrender of land. *Id.* at 395, 114 S.Ct. 2309.

¶ 40 The rough proportionality test as extracted from *Nollan* and *Dolan* has two components: first an inquiry into the presence of an " 'essential nexus' . . . between the 'legitimate state interest' " and the land dedication requirement and second, "some sort of individualized determination that the required dedication is related both in nature and extent to the impact of the proposed development." *Dolan,* 512 U.S. at 386, 391, 114 S.Ct. 2309 (quoting *Nollan,* 483 U.S. at 837–38, 107 S.Ct. 3141).

¶ 41 Our legislature borrowed verbatim the Supreme Court's formulation of the rough proportionality test to create the text of section 17–27a–507, which states:

A county may impose an exaction or exactions on development proposed in a land use application provided that:

(1) an essential link exists between a legitimate governmental interest and each exaction; and

(2) each exaction is roughly proportionate, both in nature and extent, to the impact of the proposed development.

Utah Code Ann. § 17–27a–507 (2005).

¶ 42 Both *Nollan* and *Dolan* arose from discretionary adjudicative proceedings as distinguished from exactions imposed pursuant to generally applicable land-use regulations. It is this distinction, rather than the content of the rough proportionality test itself, that is at the nub of the issue before us. The County insists that, at least with respect to exactions mandated before the effective date of section 17–27a–507, the rough proportionality test applied only in circumstances akin to those present in *Nollan* and *Dolan.* Because the exactions sought from B.A.M. resulted from the non-discretionary application of Ordinance 15.28.010, a rough proportionality inquiry was unwarranted.

¶ 43 As correctly noted by Judge Orme in his dissent, courts and scholars are unanimous in their assessment that the scope of the *Nollan/Dolan* analysis is unsettled. 2004 UT App 34, ¶ 57, 87 P.3d 710. Some land-use decisions fall neatly within the legislative/adjudicative categorical framework. Most do not. One frequently cited scholarly treatment on the topic notes that "[i]n reality, the discretionary powers of municipal authorities exist along a continuum and seldom fall into the neat categories of a fully predetermined legislative exaction or a completely discretionary administrative determination as to the appropriate exaction." Inna Reznik, *The Distinction Between Legislative and Adjudicative Decisions in Dolan v. City of Tigard,* 75 N.Y.U. L.Rev. 242, 266 (2000).

¶ 44 Justice Thomas echoed this point when he observed:

It is hardly surprising that some courts have applied *Tigard's* rough proportionality test even when considering a legislative enactment. It is not clear why the existence of a taking should turn on the type of governmental entity responsible for the taking. A city council can take property just as well as a planning commission can. Moreover, the general applicability of the ordinance should not be relevant in a takings analysis. If Atlanta had seized several hundred homes in order to build a freeway, there would be no doubt that Atlanta had taken property. The distinction between sweeping legislative takings and

particularized administrative takings appears to be a distinction without a constitutional difference.

*Parking Ass'n of Ga. Inc. v. City of Atlanta,* 515 U.S. 1116, 115 S.Ct. 2268, 132 L.Ed.2d 273 (1995) (Thomas, J., joined by O'Connor, J., dissenting from denial of certiorari).

¶ 45 This court has yet to lend its voice to the unruly judicial chorus on this issue. We would be ill-advised to choose whether to adopt or apply the legislative/adjudicative model based solely on our judgment concerning which side of the debate has the more persuasive case. This is because our legislature has spoken directly to the question.

■ ¶ 46 The general proscription against retroactive application of laws with substantive effect has little or no relevance where the statutory enactment fills a void or resolves an unsettled question upon which we have taken no position. Knowing as we do that the legislature intended to apply the rough proportionality test to all exactions, irrespective of their source, commencing on the effective date of section 17–27a–507, we are hard pressed to find a reason to assume that the legislative view of the proper scope of the rough proportionality test would have been different before section 17–27a–507 went into effect. In an environment in which the policy choice reflected in the decision to apply the rough proportionality test to all exactions would not upend any reasonable expectation on the part of a governmental entity that its exactions would escape rough proportionality scrutiny, we do not hesitate to align the law applicable to this case to that later embraced by the legislature. Accordingly, we hold that the rough proportionality test governs the County's exaction of B.A.M.'s property.

## CONCLUSION

¶ 47 We have concluded that the district court properly received evidence over two days relating to the proportional impact of the County's proposed exactions on B.A.M.'s property interests and the proposed B.A.M. development on the traffic demands placed on 3500 South. As a result of this holding, the trial record is available to draw upon

when conducting the rough proportionality inquiry that we have determined to be necessary to a proper adjudication of B.A.M.'s property rights.

¶ 48 Although Judge Orme would have conducted a rough proportionality review in conjunction with the direct appeal of the district court's decision, we conclude that it would be improper for us to follow his lead. We decline to do so because we were not asked nor did we consent to undertake certiorari review of the merits of B.A.M.'s takings claim. For this reason, we remand to the court of appeals with instructions to remand this matter to the district court for the purpose of conducting a rough proportionality review. This review may take into account, but is not limited to, the record previously developed in the district court.

¶ 49 Chief Justice DURHAM, Associate Chief Justice WILKINS, Justice DURRANT, and Justice PARRISH concur in Justice NEHRING's opinion.