2008 UT 74

**B.A.M. DEVELOPMENT, L.L.C., a Utah limited liability company, Plaintiff and Appellant,**

v.

**SALT LAKE COUNTY, a body politic and political subdivision of the State of Utah, Defendant and Appellee.**

No. 20070137.

Supreme Court of Utah.

Oct. 24, 2008.

Stephen G. Homer, West Jordan, for plaintiff.

Lohra L. Miller, Donald H. Hansen, Salt Lake City, for defendant.

## AMENDED OPINION

WILKINS, Justice:

¶ 1 Appellant B.A.M. Development alleges that the trial court incorrectly applied the "rough proportionality" analysis from *Dolan v. City of Tigard*, 512 U.S. 374, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994), in examining whether an exaction required of the developer by Appellee Salt Lake County was an unconstitutional taking. We hold that the trial court did not apply the correct analysis, and thus reverse and remand.

## BACKGROUND

¶ 2 In 1997, B.A.M. Development (B.A.M.) sought approval from Salt Lake County to build a residential development. The County informed B.A.M. that approval was condi-tioned upon B.A.M. expanding the current width of the major road bordering the proposed development (3500 South) from seventeen feet "half-width" (approximately 34 feet in total width) to 40 feet half-width. Later, in accordance with changes to the County's master traffic plan, the County told B.A.M. that it would be required to increase the street to 53 feet half-width. This additional exaction of 13 feet, B.A.M. alleges, represents an unconstitutional taking.

¶ 3 After appealing the County's decision through administrative channels, B.A.M. sued the County, seeking either to escape the exaction or to receive just compensation for the alleged taking. After losing in the trial court, B.A.M. appealed to the court of appeals and then to this court.

¶ 4 In a prior decision on this same case, this court held that the trial court should use the "rough proportionality" analysis in *Dolan v. City of Tigard*, 512 U.S. 374, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994), to determine whether the exaction was an unconstitutional taking. *B.A.M. Dev., L.L.C. v. Salt Lake County*, 2006 UT 2, ¶ 46, 128 P.3d 1161. On remand, the trial court again denied B.A.M.'s claims. B.A.M. now appeals from that decision.

## ANALYSIS

¶ 5 The dispute between the parties is whether the trial court correctly applied the "rough proportionality" analysis from *Dolan v. City of Tigard*, 512 U.S. 374, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994). Whether the proper analysis was applied is a mixed question of law and fact. In this case, because "the legal concept is easily defined" and because the case involves important constitutional property concerns, the standard of review is correctness. *State v. Levin*, 2006 UT 50, ¶¶ 23–24, 144 P.3d 1096 ("Discretion is most confined—and the standard of review is nondeferential—when the legal concept is easily defined by appellate courts or when appellate courts erect strict fences for policy reasons.").

¶ 6 In *Dolan*, the United States Supreme Court held that a municipally required exac-

tion must be roughly proportionate to the impact of the development; otherwise, the exaction is an unconstitutional taking in violation of the Fifth Amendment. *See Dolan,* 512 U.S. at 391, 114 S.Ct. 2309 ("We think a term such as 'rough proportionality' best encapsulates what we hold to be the requirement of the Fifth Amendment."). The *Dolan* analysis requires a court to examine two factors, the exaction and the development's impact, and to determine whether the two are in rough proportionality. In this case, both parties effectively agree that one of those factors—the impact of the development—is a 3.04% increase in traffic along 3500 South. The parties disagree on the other factor, however, as well as whether the two are roughly proportionate.[1]

¶ 7 A closer examination of *Dolan* clarifies how to determine whether the two factors are roughly proportionate. In *Dolan,* the Court looked first to how the states had approached the issue of exactions as unconstitutional takings. *See id.* at 389–91, 114 S.Ct. 2309. After examining various approaches, the Court stated that the "reasonable relationship" test, then being used in Utah[2] and the majority of other states, was "closer to the federal constitutional norm" than the other tests. *Id.* at 391, 114 S.Ct. 2309. The Court explained, however, that it would not "adopt it as such, partly because the term 'reasonable relationship' seems confusingly similar to the term 'rational basis' which describes the minimal level of scrutiny under the Equal Protection Clause of the Fourteenth Amendment." *Id.* Instead, the Court held, "[w]e think a term such as 'rough proportionality' best encapsulates what we hold to be the requirement of the Fifth Amendment." *Id.*

¶ 8 Of course, the Court did not mean rough *proportionality* at all. While 1 to 1 is a proportion, so is 1 to 1000, as any fifth grade student will be happy to tell you. Any two numbers, measured by the same units, form a proportion. So to be roughly proportional literally means to be roughly related, not necessarily roughly *equivalent,* which is the concept the Court seemed to be trying to describe. The proportion of 1 to 1.01 is roughly equivalent, while the proportion of 1 to 3 is not, for example. Unfortunately, by using the phrase "rough proportionality," the Court has engendered vast confusion about just what the municipalities and courts are expected to evaluate when extracting action or value from a land owner trying to improve real property. In this instance, rather than adopting the name chosen by the United States Supreme Court, we will use the more workable description of rough equivalence, on the assumption that it represents what the *Dolan* Court actually meant.

¶ 9 After deciding on what to call the analysis, the Court explained what it entailed: In order for an exaction to be constitutional, a municipality must make some determination "that the required dedication is related both in *nature* and *extent* to the impact of the proposed development." *Id.* (emphases added). The *Dolan* analysis thus has two aspects: first, the exaction and impact must be related in nature; second, they must be related in extent.

¶ 10 A court engaging in a *Dolan* analysis must first determine, therefore, whether the nature of the exaction and impact are related. One method that other courts have adopted to determine this relationship is to look at the exaction and impact in terms of a solution and a problem, respectively.[3] We agree that the impact is the

---

1. For example, the County argues that the exaction is roughly proportionate to the impact because the exaction represents, alternatively, 1.89% of the total land of the development, 2.22% of the developers' available lots, 1.38% of the total area of the road after widening, or 2.01% of the total expanded area of the road. B.A.M., on the other hand, argues that the exaction is grossly disproportionate to the impact because the exaction results, alternatively, in a 300% increase in the road's carrying capacity, a 300% increase in the road width, or a payment of 100% of the road improvement costs.

2. *See, e.g., Banberry Dev. Corp. v. S. Jordan City,* 631 P.2d 899, 902–05 (Utah 1981).

3. *See, e.g., Sparks v. Douglas County,* 127 Wash.2d 901, 904 P.2d 738, 742 (1995) (stating that an exaction must be "reasonably calculated to prevent, or compensate for, adverse public impacts of the proposed development" (citation and internal quotation marks omitted)); *Burton v. Clark County,* 91 Wash.App. 505, 958 P.2d 343, 354 (1998) ("[T]he government must show that its proposed solution to the identified public problem is 'roughly proportional' to that part of

problem, or the burden that the community will bear because of the development. The exaction should address the problem. If it does, then the nature component has been satisfied.

¶ 11 The second component of the *Dolan* analysis is whether the exaction and impact are related in extent. This requirement implies that both the exaction and the impact should be measured in the same manner, or using the same standard. The most appropriate measure is cost—specifically, the cost of the exaction and the impact to the developer and the municipality, respectively. The impact of the development can be measured as the cost to the municipality of assuaging the impact. Likewise, the exaction can be measured as the value of the land to be dedicated by the developer at the time of the exaction, along with any other costs required by the exaction. Our trial courts are very adept at figuring out costs in similar situations, and are more than capable of adjudging the cost of each factor in this context.

¶ 12 After determining the cost to each party, the final step of the extent component of the *Dolan* analysis is simple: The trial court must determine whether the costs to each party are roughly equivalent.[4] Because each factor is measured the same way, in dollars, this calculation should be very simple. If the two sums are about the same, they are roughly equivalent for this purpose.

¶ 13 With this framework in mind, applying the *Dolan* analysis becomes a relatively straightforward task. First, the trial court must determine whether the exaction and impact are related in nature—or whether the solution (the exaction) directly addresses the specific problem (the impact). Second, the trial court must determine what the cost of dealing with the impact would be to the County, absent any exaction; what the cost of the exaction would be to the developer; and whether the two costs are roughly

equivalent. The trial court, despite a valiant effort to divine the application of *Dolan's* "rough proportionality" test, did not correctly apply the *Dolan* analysis because it failed to compare respective costs of the exaction and impact to the parties.

## CONCLUSION

¶ 14 The *Dolan* analysis, properly applied, asks whether the imposition on the community of a proposed development is roughly equal to the cost being extracted to offset it. We hold that the trial court applied the *Dolan* analysis incorrectly, and we reverse and remand the trial court's decision for further proceedings consistent with this opinion.

¶ 15 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice PARRISH, and Judge McHUGH concur in Justice WILKINS' opinion.

¶ 16 Justice NEHRING does not participate herein; Court of Appeals Judge CAROLYN B. McHUGH sat.

---

the problem that is created or exacerbated by the landowner's development.").

4. As the Court noted in *Dolan*, exact equality between the factors is unnecessary. *Dolan v. City of Tigard*, 512 U.S. 374, 391, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994) ("No precise mathemati-

cal calculation is required . . . ."); *see also Banberry*, 631 P.2d at 904 ("Precise mathematical equality 'is neither feasible nor constitutionally vital.'" (quoting *Airwick Indus., Inc. v. Carlstadt Sewerage Auth.*, 57 N.J. 107, 270 A.2d 18, 26 (1970))).