2017 UT App 141

## THE UTAH COURT OF APPEALS

ANDREA P. LINDSTROM,
Appellant,
*v.*
CUSTOM FLOOR COVERING INC.,
Appellee.

Opinion
No. 20150510-CA
Filed August 3, 2017

First District Court, Logan Department
The Honorable Thomas L. Willmore
No. 140100438

Shaun L. Peck and John D. Luthy, Attorneys
for Appellant

Mark B. Hancey, Attorney for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES GREGORY K. ORME and STEPHEN L. ROTH concurred.[1]

MORTENSEN, Judge:

¶1     Andrea P. Lindstrom appeals the district court's decision
that a lien encumbering her residence was not wrongful under
Utah's Wrongful Lien Act (the Act). We affirm.

BACKGROUND

¶2     Lindstrom and her ex-husband (Ex-husband) owned a
piece of residential property (the Property) as joint tenants. As

---

1. Judge Stephen L. Roth participated in this case as a member of
the Utah Court of Appeals. He retired from the court before this
decision issued.

part of their January 2010 divorce, Lindstrom was awarded the Property. Initially, neither Lindstrom nor Ex-husband recorded the divorce decree or any other document, such as a quitclaim deed, that transferred ownership in the Property.

¶3    In February 2011, Ex-husband executed a promissory note payable to Custom Floor Covering Inc. (CFC), in the amount of $14,685.13. The promissory note granted CFC the right to record liens against "all real and personal property currently held, or hereinafter acquired" by Ex-husband. CFC recorded a notice of lien against the Property that same month.

¶4    Lindstrom eventually learned of the lien and, through counsel, wrote a letter to CFC indicating that the lien was wrongful and demanding that the lien be released within ten days. In response, CFC recorded a clarified notice of lien against the Property in June 2011, noting that the lien applies "only against the interests of [Ex-husband]." Lindstrom then recorded the divorce decree in July 2011. Thus, at the time CFC recorded the clarified notice of lien, Ex-husband's name remained on the property's title. *But see infra* ¶ 28 note 7.

¶5    In February 2014, Lindstrom again demanded that CFC release the lien. When CFC did not release the lien, Lindstrom filed a petition to nullify a wrongful lien, asking the district court, pursuant to the Act, to declare the lien void and also seeking treble damages, attorney fees, and costs.

¶6    After a summary hearing,[2] the district court concluded that the lien was not wrongful under the statute, explaining that its review must be limited "to what the parties knew at the time the liens were filed." Twenty-two days later, Lindstrom filed a motion to alter judgment under rule 59(e) of the Utah Rules of

---

2. The Act provides for summary proceedings to nullify a wrongful lien. *See* Utah Code Ann. § 38-9-205(1), (4) (LexisNexis 2014).

Civil Procedure. The district court declined to alter its judgment and further stated that it "considers the Motion to Alter Judgment to be a motion to reconsider. Even though counsel has styled it as a Motion to Alter Judgment, the same arguments are being presented to the Court." Twenty-eight days after the court's order was entered, Lindstrom filed a notice of appeal. Lindstrom argues that the district court's conclusion that CFC's lien was not wrongful was in error.

## ISSUES AND STANDARDS OF REVIEW

¶7     There are two issues before us for review. We first must determine whether the district court's characterization of Lindstrom's motion to alter judgment as a motion to reconsider deprives this court of jurisdiction. "Whether appellate jurisdiction exists is a question of law." *Rosas v. Eyre*, 2003 UT App 414, ¶ 9, 82 P.3d 185 (citation and internal quotation marks omitted). We review legal conclusions for correctness. *See Davis v. Davis*, 2003 UT App 282, ¶ 7, 76 P.3d 716.

¶8     Second, we must determine whether the district court erred in its determination that CFC's lien on the Property was not wrongful. "Whether a lien is wrongful [under the Act] is a question of law which we review for correctness, giving no deference to the [district] court's legal conclusions." *Pratt v. Pugh*, 2010 UT App 219, ¶ 7, 238 P.3d 1073 (citation and internal quotation marks omitted).

## ANALYSIS

### I. The Motion to Alter Judgment Tolled the Time for Appeal

¶9     We first examine the district court's conclusion that Lindstrom's motion to alter judgment was actually a motion to reconsider. This question is paramount to Lindstrom's appeal because if her motion was a motion to reconsider, it did not toll

the time within which she could file her appeal, and this court lacks jurisdiction to consider it.[3] *See Gillett v. Price*, 2006 UT 24, ¶ 7, 135 P.3d 861.

¶10     Rule 4 of the Utah Rules of Appellate Procedure states that a notice of appeal "shall be filed . . . within 30 days after the date of entry of the judgment or order appealed from." Utah R. App. P. 4(a). Rule 4 also lists specific motions for which the date of final disposition of that motion replaces the date of the entry of judgment when calculating the timeliness of the notice of appeal. *Id.* R. 4(b). A rule 59 motion to alter or amend judgment extends the time for appeal, *id.* R. 4(b)(1)(C), but a motion to reconsider—a motion that does not exist under the Utah Rules of Civil Procedure—does not, *Gillett*, 2006 UT 24, ¶ 6.

¶11     The Utah Supreme Court analyzed this issue in *B.A.M. Development, LLC v. Salt Lake County*, 2012 UT 26, 282 P.3d 41. There, the court held, "Rule 4(b) is triggered by the filing of a motion that is properly styled as one of the motions enumerated in the rule and that plausibly requests the relevant relief." *Id.* ¶ 13. The court further concluded that "although B.A.M.'s arguments were unconvincing and repetitive, neither rule 4(b) nor rule 59 require that a posttrial motion make winning arguments to be procedurally proper." *Id.* ¶ 14.

¶12     Here, it is undisputed that Lindstrom styled her motion to alter judgment as a proper motion under rule 59 of the Utah Rules of Civil Procedure. Lindstrom's motion also plausibly

_____

3. We remain dubious that a district court's characterization of a motion could affect our independent determination of whether we have jurisdiction in a given case, both because such a determination is reviewed for correctness and because we, not the district court, determine our own jurisdiction. *See State v. Arghittu*, 2015 UT App 22, ¶ 12, 343 P.3d 709 (noting that whether appellate jurisdiction exists is a question of law that the court of appeals decides in the first instance).

requested relief under that rule—requesting that the district court alter its judgment against her. The district court nevertheless concluded that the motion was a motion to reconsider because Lindstrom made "the same arguments" to the court in the motion that she argued at the hearing. However, just as in *B.A.M.*, the "repetitive" arguments here do not affect whether the motion is "procedurally proper." *See id.* Because her motion was "properly styled" as a rule 59(e) motion and "plausibly requests the relevant relief," we conclude that Lindstrom's motion to alter judgment was "procedurally proper." *See id.* ¶¶ 13–14. Therefore, the deadline to file a notice of appeal was tolled until that motion was resolved, and this court has jurisdiction to consider the merits of the appeal.

## II. CFC's Lien Was Not Wrongful

¶13    We now turn to the merits of the appeal. Lindstrom contends that the district court erred in its conclusion that CFC's lien was not a wrongful lien under the Act.

¶14    The Act provides summary relief to those against whom a wrongful lien is recorded. Utah Code Ann. § 38-9-205(1) (LexisNexis 2014).[4] The district court, through the summary proceeding available in accordance with the Act, "may only determine whether a document is a wrongful lien" and "may not determine any other property or legal rights of the parties or restrict other legal remedies of any party." *Id.* § 38-9-205(4).

---

4. Although the Act was updated in 2014, the Act states, "This chapter does not apply to a notice of interest filed before May 5, 2008." Utah Code Ann. § 38-9-103(1) (LexisNexis 2014). It therefore appears that the current version of the Act applies to liens filed in 2011. Further, any differences between the current version and the version in effect at the time the lien was filed do not materially affect our analysis of these facts. We therefore cite the current version of the Act.

¶15    A wrongful lien is:

> any document that purports to create a lien, notice of interest, or encumbrance on an owner's interest in certain real property and at the time it is recorded is not:
>
> . . .
>
> (c) signed by or authorized pursuant to a document signed by the owner of the real property.

*Id.* § 38-9-102(12). The Act requires that the wrongfulness of the lien be determined as of "the time it is recorded." *Id.* "Indeed, we have held that this section requires a court to evaluate the validity of a lien 'based on the facts known at the time it was recorded, not at a later point in time after evaluating the merits.'" *Pratt v. Pugh*, 2010 UT App 219, ¶ 10, 238 P.3d 1073 (quoting *Eldridge v. Farnsworth*, 2007 UT App 243, ¶ 50, 166 P.3d 639).

¶16    The heart of Lindstrom's contention on appeal is that evaluating the wrongfulness of a lien should be based on the facts "as they existed" at the time the lien was recorded, as opposed to evaluating the lien based on "the facts known" at the time the lien was recorded. Lindstrom argues that applying the standard as articulated in *Pratt* and *Eldridge* to this case adds a knowledge requirement to the analysis that is absent from the language of the statute. Lindstrom essentially equates determining facts "as they existed" with the ultimate validity of the lien. These arguments ignore controlling precedent and misinterpret the Act.

¶17    The leading case on the definition of a wrongful lien under the Act is *Hutter v. Dig-It, Inc.*, 2009 UT 69, 219 P.3d 918. In *Hutter*, the Utah Supreme Court addressed whether a lien was valid and whether filing a notice of that lien constituted a

wrongful lien. *Id.* ¶ 1. First, the *Hutter* court determined that the mechanic's lien at issue was unenforceable because of a failure to file a preliminary notice required by law. *Id.* ¶ 43. Second, the *Hutter* court addressed whether the district court correctly nullified the lien under the Act. *Id.* ¶ 44. The *Hutter* court recognized that because it had already determined that the district court properly ruled the lien unenforceable, the court did not need to reach the issue of whether the district court properly nullified the lien under the Act. *Id.* ¶ 45. However, because of the importance of the issue, the court took the opportunity to clarify the reach of the Act. *Id.*

¶18    After determining the plain text of the Act was ambiguous, the *Hutter* court thoroughly reviewed the legislative history of the Act. *Id.* ¶¶ 49–50. The court ultimately determined,

> This legislative history makes clear that the legislature intended that the definition of "wrongful lien" should encompass only common law liens. Therefore, we conclude that the phrase "not expressly authorized by . . . statute" in the Wrongful Lien Act does not include statutorily created liens that ultimately prove unenforceable. Because [the alleged lien holder] filed a mechanic's lien, which is expressly authorized by statute, the lien, though unenforceable for the reasons stated above, is not wrongful under the Wrongful Lien Injunction Act.

*Id.* ¶ 52 (omission in original).

¶19    This court subsequently applied the analysis of *Hutter* in *Bay Harbor Farm, LC v. Sumsion*, 2014 UT App 133, 329 P.3d 46. In *Bay Harbor*, an attorney filed an attorney's lien on property owned by his putative client, Bay Harbor. *Id.* ¶ 3. The attorney was retained by a manager and minority shareholder of Bay Harbor. *Id.* ¶ 2. Bay Harbor filed a petition to have the lien declared wrongful under the Act. *Id.* ¶ 4. Bay Harbor maintained

that the lien was not expressly authorized by statute. *Id.* ¶ 5. The district court granted the petition and nullified the lien. *Id.* We reversed. *Id.* ¶ 1.

¶20 The district court analyzed the enforceability of the attorney's lien under the attorney's lien statute and concluded that it was unable, in an expedited proceeding, to make a finding as to whether Bay Harbor was a client of the attorney, but the district court did find that the property at issue was not the subject of or connected with the attorney's work. *Id.* ¶ 8. The district court therefore adjudged the lien unenforceable and declared it void ab initio. *Id.* Referencing *Hutter*, this court stated:

> Closely analogous to the circumstances presented in *Hutter*, [the attorney] filed an attorney's lien, which is expressly authorized by statute, and it is therefore not wrongful. This is true even if it ultimately proves unenforceable, whether because Bay Harbor was not [the attorney's] client, because the Bay Harbor property was unconnected to the workers' compensation claim, or on some other basis. But an expedited hearing under the Wrongful Lien Act is not the right vehicle for analyzing the lien's enforceability under the attorney's lien statute.

*Id.* ¶ 11. Thus, we recognized that the facts ultimately to be proved in a different proceeding might show the lien claimant was never entitled to a lien in the first place. We continued:

> This is not to say that a lien claimant may escape the reach of the Wrongful Lien Act simply by alleging that his or her lien is expressly authorized by statute. Although a court may not, within the context of a summary proceeding under the Wrongful Lien Act, analyze whether a statutory lien is ultimately enforceable, it may consider

whether a lien claimant has a good-faith basis for claiming a statutory lien. The legislative history cited by the Supreme Court in *Hutter* supports this conclusion. Senator Carling expressed his concern about the scope of the Wrongful Lien Act only as it applies to the lien claimant who rationally believes he has a valid statutory lien but who might have it nonetheless declared wrongful at an expedited proceeding. Conversely, if a lien claimant has no plausible claim to the property that is the subject of the lien, a court may declare the lien wrongful under the Wrongful Lien Act even if it purports to be one falling into the category of statutorily authorized liens. For example, a person who is not an attorney could have no plausible basis for recording an attorney's lien; a dentist who repaired a patient's crowns would have no basis for recording a mechanic's lien against the patient's residence.

*Id.* ¶ 12 (footnote, citations, and internal quotation marks omitted). We then concluded that the attorney "had a sufficiently plausible good-faith claim that his lien complied with the requirements of the attorney's lien statute to insulate it from nullification under the Wrongful Lien Act." *Id.* ¶ 13.[5] We ultimately held:

> In the context of an expedited proceeding under the Wrongful Lien Act, a district court may only consider whether a statutory lien claimant has a

---

5. The *Bay Harbor* court also noted that Bay Harbor may still challenge the lien as unenforceable in an appropriate proceeding. *Bay Harbor Farm, LC v. Sumsion*, 2014 UT App 133, ¶ 13 n.3, 329 P.3d 46.

plausible good-faith basis for claiming that the lien
is authorized by statute.

*Id.* ¶ 16.

¶21    While the present matter does not involve a statutory lien,
the action is brought under a separate subsection of the Act
dealing with contractual liens. We see no reason why the
*Hutter/Bay Harbor* analysis would not apply to contractual liens
as identified in the Act. Indeed, the Act specifically defines a
wrongful lien as a document that purports to create a lien, notice
of interest, or encumbrance, and at the time it is recorded is not:

> (a) expressly authorized by this chapter or another
>     state or federal statute;
>
> (b) authorized by or contained in an order or
>     judgment of a court of competent jurisdiction in
>     the state; or
>
> (c) *signed by or authorized pursuant to a document
>     signed by the owner of the real property.*

Utah Code Ann. § 38-9-102(12) (LexisNexis 2014) (emphasis
added). Thus, subsection (c) specifically anticipates contractual
or other consensual liens. Accordingly, just as with a statutory
lien, the question presented is whether CFC had a plausible
good-faith basis for claiming a contractual or consensual lien at
the time it filed the lien.

¶22    Neither party cited *Hutter* or *Bay Harbor* in their briefs, but
these cases were discussed before this court at oral argument.
Pursuant to Utah Rule of Appellate Procedure 24(j), both parties
submitted letters addressing *Bay Harbor* after oral argument. In
her letter, Lindstrom argues:

> [CFC] had a good-faith basis at the time of
> recording for claiming its lien was authorized by
> an owner of the property, but at the Wrongful Lien

> Act hearing it no longer had a good-faith basis for
> that claim; by then it knew its lien had been
> "wrongful" all along.

Thus, Lindstrom concedes that at the time of recording CFC had a good-faith basis for recording its lien. This concession is fatal to Lindstrom's position on appeal under the holding of *Bay Harbor*. For the reasons stated above, the determination of whether a lien is wrongful is made at the time of recording, and Lindstrom's concession that CFC had a good-faith basis for the filing of its lien at the time of recording resolves the issue of whether a plausible good-faith basis existed.

¶23   Lindstrom's argument that CFC's lien became wrongful between the time of its filing and the expedited hearing held pursuant to the Act is untenable under the statute. As explained above, the Act "is explicit that the wrongfulness of a lien must be determined as of the time it is recorded or filed." *Pratt v. Pugh*, 2010 UT App 219, ¶ 10, 238 P.3d 1073 (citation and internal quotation marks omitted). Given the unambiguous directive of the statute that wrongfulness of a lien is determined as of the time it is recorded, we look to see only whether a plausible good-faith basis existed at that time.[6]

¶24   Lindstrom points to section 38-9-203 of the Utah Code, which authorizes civil liability for recording a wrongful lien under the Act, and claims that these provisions mandate that the district court determine wrongfulness at some point in time other than at the time the lien is recorded. This argument fails.

---

6. This is not to say that there is no merit in the argument that public policy might be served through the creation of a mechanism where, if notice showing that the lien is invalid is given to a lien claimant *after* a lien is filed, although it was plausible when filed, the lien claimant should have a duty to remove the lien. But that is a question for the legislature because that is not how the Act currently reads.

¶25   Subsection (1) provides:

> A lien claimant who records or causes a wrongful lien to be recorded in the office of the county recorder against real property is liable to a record interest holder for any actual damages proximately caused by the wrongful lien.

Utah Code Ann. § 38-9-203(1). Subsection (2) provides:

> If the person in violation of Subsection (1) refuses to release or correct the wrongful lien within 10 days from the date of written request from a record interest holder of the real property delivered personally or mailed to the last-known address of the lien claimant, the person is liable to that record interest holder for $3,000 or for treble actual damages, whichever is greater, and for reasonable attorney fees and costs.

*Id.* § 38-9-203(2).

¶26   Lindstrom argues, "If a document can never be a wrongful lien if the person who recorded it did not know at the time that it was wrongful, two of the Act's sanctions[, subsections (1) and (2),] become superfluous." This assertion misreads the statute and misses the point of our earlier analysis in *Bay Harbor*. As the plain language of these provisions indicates, these sanctions come into play if, and only if, a wrongful lien has been found. Accordingly, where a person has no plausible good-faith basis to file a lien, that person is liable under subsection (1) for actual damages, and once that person has received a written request and ten days have passed, under subsection (2) the augmented sanction of the greater of $3,000 or treble actual damages applies. But where the lien claimant does have a plausible good-faith basis to file the lien, which basis may at the end of the day prove to be in error, the statutory mechanism for summary nullification of the lien under the Act

simply does not apply. Issues relating to a determination of "any other property or legal rights" between the parties or any other "legal remedies" must be addressed in a separate proceeding. *See id.* § 38-9-205(4); *Bay Harbor Farm, LC v. Sumsion*, 2014 UT App 133, ¶ 11, 329 P.3d 46.

¶27 Where the Act's narrow summary review reveals that a lien is wrongful, one of the three delineated sanctions may apply based on the facts of that case. But where, for example, the district court is required to determine property rights outside of the Act's narrow summary review to reach a conclusion of invalidity, the lien is not wrongful whether it ultimately is determined to be a valid lien or not. Therefore, "evaluat[ing] the validity of a lien 'based on the facts known at the time it was recorded'" does not necessarily determine whether any particular tier of the Act's sanction applies. *See Pratt*, 2010 UT App 219, ¶ 10 (quoting *Eldridge v. Farnsworth*, 2007 UT App 243, ¶ 50, 166 P.3d 639). Again, the question presented under the Act is whether the party filing the lien had a plausible good-faith basis for claiming a lien, whether it is a statutory lien, a judgment lien, or a consensual lien. *See Bay Harbor*, 2014 UT App 133, ¶ 16.

¶28 Under the facts of this case, CFC had a plausible good-faith basis for claiming that the lien was a valid contractual lien. Ex-husband signed the promissory note granting CFC the right to encumber his property at a time when he was a record owner of the Property. As far as CFC knew, based on the facts at the time the lien was filed, Ex-husband shared ownership in the Property. Accordingly, CFC had a good-faith plausible basis to file the lien and therefore, at the time the lien was filed, the lien was not wrongful. If the district court were to have concluded, as Lindstrom maintains it should have, that the promissory note was not signed by an owner of the Property, the court would have had to make a separate legal conclusion that the divorce

decree alone divested Ex-husband of his ownership interest in the Property.[7] Again, the Act specifically limits the district court in this summary proceeding to determine only "whether a document is a wrongful lien" and that it "may not determine any other property or legal rights of the parties or restrict other legal remedies of any party." Utah Code Ann. § 38-9-205(4) (LexisNexis 2014). Therefore, the district court properly limited its evaluation of the lien to "the facts known at the time it was recorded, not at a later point in time after evaluating the merits." *Pratt v. Pugh*, 2010 UT App 219, ¶ 10, 238 P.3d 1073 (quoting *Eldridge*, 2007 UT App 243, ¶ 50).

CONCLUSION

¶29    For the foregoing reasons, we affirm the district court's determination that CFC's lien against the Property was not wrongful.

_____

7. Indeed, to conclude such would require a separate analysis of competing facts. While Lindstrom asserts that the divorce decree establishes the property rights of the parties, CFC contends that the original divorce decree "does not identify the legal description, address or tax identification number of real property." CFC further argues that the decree "uses future tense language such as 'shall be awarded' rather than 'is hereby awarded.'" At the same time, CFC argued to the district court, and devotes the majority of its brief in this appeal to, a complex analysis of Utah's race-notice statutes, claiming that CFC enjoys bona fide purchaser status. We do not evaluate the merits of these contentions, but only mention them to demonstrate that to reach the conclusion Lindstrom maintains, the district court would have to determine other property rights of the parties— something the Act specifically says the court may not do. *See* Utah Code Ann. § 38-9-205(4) (LexisNexis 2014).