**2017 UT App 189**

## THE UTAH COURT OF APPEALS

THE ESTATE OF ROSE FLYGARE, MARJORIE BELL, RICHARD PRATT,
AND JENNIFER PRATT,
Appellants,
*v.*
OGDEN CITY AND BLACK & McDONALD LLC,
Appellees.

Opinion
No. 20160546-CA
Filed October 13, 2017

Second District Court, Ogden Department
The Honorable Ernest W. Jones
No. 140905780

Edward B. Havas and Paul M. Simmons, Attorneys
for Appellants

Stephen F. Noel and Kenneth Brown, Attorneys for
Appellee Ogden City

Terry M. Plant and Daniel E. Young, Attorneys for
Appellee Black & McDonald LLC

JUDGE DIANA HAGEN authored this Opinion, in which JUDGES
DAVID N. MORTENSEN and RYAN M. HARRIS concurred.

HAGEN, Judge:

¶1      After leaving an event at Peery's Egyptian Theater late in the evening on February 16, 2013, Rose Flygare, Marjorie Bell, and a minor child (collectively, Plaintiffs[1]) were hit by a truck

---

1. Rose Flygare died during the pendency of this case and her estate was substituted as a plaintiff. Richard and Jennifer Pratt brought this action on behalf of the minor child. For ease of

(continued…)

and injured as they crossed at a designated crosswalk in Ogden, Utah. The marked crosswalk was equipped with streetlights, but they had been inoperative for several days prior to the accident. Plaintiffs sued Ogden City and the contractor responsible for maintaining the streetlights, Black & McDonald LLC, (collectively, Defendants[2]), alleging that the inadequate lighting caused or contributed to the accident. Plaintiffs appeal the district court's entry of summary judgment, which dismissed their negligence claims against Defendants. We affirm.

BACKGROUND

¶2     On January 7 and February 6, 2013, Ogden City contacted Black & McDonald to request that it inspect and repair several "day burners" in the 2200, 2300, and 2400 blocks of Washington Boulevard. A "day burner" is a streetlight that remains on during the day instead of automatically turning off at dawn. On February 7, 2013, a Black & McDonald employee was attempting to repair a day burner when he accidentally shorted out the wires and tripped a breaker, causing the streetlights in the vicinity to go out. Five days later, Black & McDonald notified Ogden City of the streetlights' circuitry problems, but Ogden City did not authorize repairs until February 17, 2013, the day after Plaintiffs were hit in the unlit crosswalk.

¶3     The crosswalk is located in the middle of the 2400 block of Washington Boulevard, a multilane road in an area of

_____

(…continued)
reference, however, we use "Plaintiffs" to refer to either the three pedestrians who were injured or their representatives.

2. Pacificorp dba Rocky Mountain Power was a defendant in the proceedings below but was dismissed and is not a party to this appeal.

downtown Ogden that is home to arts and recreation centers, a convention center, businesses, and municipal buildings. At the time of the accident, the crosswalk did not have any cracks, potholes, raised sections, or other problems. The street was marked with white hash marks and white arrows. There were two identical signs—one in the median and one on the right-hand side of the road—depicting an arrow, a pedestrian, and a yield sign indicating a crosswalk. At the crosswalk's entrance, there was a yellow sign on the right-hand side of the road depicting a pedestrian and an arrow pointing to the crosswalk. The crosswalk did not have any flashing lights or Walk/Don't Walk signs.

¶4 Plaintiffs contend that, on the night of the accident, the driver of the truck was unable to see them in the crosswalk due to inadequate lighting. They sued Defendants, alleging negligence in failing to properly operate, maintain, and repair the streetlights. Defendants subsequently moved for summary judgment, asserting that they did not have a duty to illuminate the crosswalk. The district court agreed and granted summary judgment for Defendants on December 14, 2015. Plaintiffs filed a timely motion to alter or amend the judgment, claiming that the court had not fully considered the argument that Black & McDonald's affirmative negligent act of tripping the breaker–as opposed to its failure to maintain the streetlights–imposed liability on Defendants. On June 6, 2016, the court denied the motion and questioned whether Plaintiffs' motion was actually an improper request to reconsider. Plaintiffs filed a notice of appeal on June 24, 2016.

## ISSUE AND STANDARD OF REVIEW

¶5 On appeal, Plaintiffs challenge the district court's ruling that Defendants had no duty to light the crosswalk where the accident occurred and were therefore entitled to summary judgment. Summary judgment is appropriate if "there is no

genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Utah R. Civ. P. 56(a). "This court reviews a trial court's legal conclusions and ultimate grant or denial of summary judgment for correctness, and views the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Forsberg v. Bovis Lend Lease, Inc.*, 2008 UT App 146, ¶ 7, 184 P.3d 610 (citation and internal quotation marks omitted).

ANALYSIS

I. Jurisdiction

¶6     Before reaching the merits of this appeal, we must consider a threshold jurisdictional issue. Defendants argue that this appeal is untimely because it was filed nearly six months after the district court granted summary judgment. Plaintiffs claim that they timely filed their notice of appeal within thirty days after the denial of their motion to alter or amend the judgment. The question before us is whether Plaintiffs' post-judgment motion was a true motion to alter or amend the judgment, which extends the time for filing a notice of appeal, or an unauthorized motion to reconsider, which does not.

¶7     To be timely, a notice of appeal must be filed "within 30 days after the date of entry of the judgment or order appealed from." Utah R. App. P. 4(a). However, certain post-judgment motions, such as motions to alter or amend, toll the time for appeal. *See id.* R. 4(b). The prescribed thirty-day period does not begin to run until after the court enters an order on one of those rule-sanctioned motions. *See B.A.M. Dev. v. Salt Lake County*, 2012 UT 26, ¶ 10, 282 P.3d 41. On the other hand, because neither the Utah Rules of Appellate Procedure nor the Utah Rules of Civil Procedure recognize motions to reconsider, such motions do not toll the time for appeal. *See Gillett v. Price*, 2006 UT 24, ¶¶ 5–6, 135 P.3d 861.

¶8     Defendants argue that Plaintiffs' motion to alter or amend the judgment was, in substance, an unauthorized motion to reconsider that did not toll the time for appeal. In *B.A.M. Development*, the Utah Supreme Court rejected a similar argument. *See* 2012 UT 26, ¶ 13. In that case, the defendant argued that the time for filing a notice of appeal was not tolled by a motion to alter or amend the judgment under Utah Rule of Civil Procedure 59(e) because the motion "was in substance a motion to reconsider—in that it was essentially a 'rehash' of arguments made during trial." *Id.* ¶ 12. The supreme court declined to construe the rule 59 motion as a motion to reconsider, holding that "[r]ule 4(b) is triggered by the filing of a motion that is properly styled as one of the motions enumerated in the rule and that plausibly requests the relevant relief." *Id.* ¶ 13. Even though the arguments made in the motion "were unconvincing and repetitive, neither rule 4(b) nor rule 59 require that a posttrial motion make winning arguments to be procedurally proper." *Id.* ¶ 14.

¶9     This court recently applied that holding in a case where the district court expressly found that a rule 59 motion was, in substance, a motion to reconsider. *See Lindstrom v. Custom Floor Covering, Inc.*, 2017 UT App 141, ¶ 6, ___ P.3d ___. This court examined whether the motion (1) "was 'properly styled' as a rule 59(e) motion" and (2) "'plausibly request[ed] the relevant relief.'" *Id.* ¶ 12 (quoting *B.A.M. Dev.*, 2012 UT 26, ¶¶ 13–14). Because both requirements were met, this court held that "the deadline to file a notice of appeal was tolled until that motion was resolved." *Id.*

¶10     Similarly, the post-judgment motion in the present case was both properly styled and plausibly requested the relevant relief. Defendants do not contest that Plaintiffs "styled" their motion as a rule 59(e) motion. *See* Utah R. Civ. P. 59(e). The motion was captioned as a motion to alter or amend and cited rule 59(e). In addition, it explicitly requested "relevant relief"—

that the district court alter or amend its order of December 14, 2015. *See B.A.M. Dev.*, 2012 UT 26, ¶ 13. Thus, despite "making the same arguments," the motion was procedurally proper and tolled the time for appeal. *See Lindstrom*, 2017 UT App 141, ¶ 12. We therefore have jurisdiction to consider the merits of this appeal.

## II. Duty

¶11 Plaintiffs contend the district court "erred in concluding that the defendants had no duty to light or maintain Washington Boulevard at its busiest place." "One essential element of a negligence action is a duty of reasonable care[.]" *Beach v. University of Utah*, 726 P.2d 413, 415 (Utah 1986). "Without a duty, there can be no negligence as a matter of law, and summary judgment is appropriate." *Rocky Mountain Thrift Stores Inc. v. Salt Lake City Corp.*, 887 P.2d 848, 852 (Utah 1994). Thus, for their negligence claim to survive summary judgment, Plaintiffs must show that Defendants owed them a duty. *See Young v. Salt Lake City School Dist.*, 2002 UT 64, ¶ 12, 52 P.3d 1230. Whether a duty exists is a question of law that we review for correctness. *See Fishbaugh v. Utah Power & Light*, 969 P.2d 403, 405 (Utah 1998).

¶12 The legal analysis regarding the existence of a duty is the same for both Defendants. Municipalities, such as Ogden City, have a nondelegable duty to maintain their streets in a reasonably safe condition for travel. *See Bowen v. Riverton City*, 656 P.2d 434, 437 (Utah 1982). Ogden City would be liable if the negligence of its independent contractor, Black & McDonald, violated this nondelegable duty. *See Castellanos v. Tommy John, LLC*, 2014 UT App 48, ¶ 23, 321 P.3d 218. As for Black & McDonald, as a general matter, "an independent contractor responsible for municipal light repairs owes no duty of care to the general public." *Vergara v. Tides Constr. Corp.*, 721 N.Y.S.2d 103, 103 (N.Y. App. Div. 2001). A contractor may be held liable in

certain limited circumstances, however, such as where streetlights are necessary "to obviate a dangerous condition," where the actions of the contractor "create a risk greater than the risk created by the total absence of a streetlight," or where the public has "relied on the operation of the streetlight [forgoing] other protective actions." *See White v. Southern Cal. Edison Co.*, 30 Cal. Rptr. 2d 431, 437 (Ct. App. 1994). As explained below, a municipality would have a duty to light the street under those same circumstances. Because the undisputed facts in this case do not give rise to such a duty, summary judgment was appropriate as to both Defendants.

A.    No Duty to Light Otherwise Safe Streets

¶13    The Utah Supreme Court has previously considered whether municipalities have a duty to install and maintain streetlights and held that a city has no duty to light an otherwise safe street. *See Fishbaugh*, 969 P.2d at 403. In *Fishbaugh*, a car hit a pedestrian as he crossed a mid-block crosswalk at 350 South West Temple in Salt Lake City, Utah. *See id.* at 404. At the time of the accident, streetlights in the area were not working due to a short in the photocell. *Id.*

¶14    The supreme court recognized the general rule that "a municipality possesses no duty to light its streets." *Id.* at 405 (citation and internal quotation marks omitted). "Because a municipality has no common law duty to light its streets, it has no duty to maintain such lights that it has nevertheless elected to install." *Id.* at 406.

¶15    On the other hand, a city "does have the clear duty to maintain its streets reasonably safe for travel" and "to warn of dangerous conditions on its streets." *Id.* Streetlights are one medium municipalities can use to provide adequate warning. *Id.* As a result, a municipality may have the duty to provide streetlights if such lighting is necessary to warn travelers of "defects, obstructions, and unsafe places in its streets." *Id.*

(citation and internal quotation marks omitted). In other words, a city's "duty to install and maintain streetlights is dependent upon the existence of a hazardous condition." *Id.* at 407.

¶16   Ultimately, the *Fishbaugh* court did not reach the question of whether a hazardous condition existed. The court held that, "even assuming [the existence of] a hazardous condition requiring lighting and a duty to maintain the lights," summary judgment was appropriate because there was "no evidence that either the City or [the utility] was negligent." *Id.*

¶17   Plaintiffs argue that, "[b]ecause *Fishbaugh* was decided on the grounds that there was no evidence of negligence," it should not control this court's determination of whether Defendants had a duty to light the crosswalk at issue in the present case. While it is true that the *Fishbaugh* court did not ultimately decide whether there was a hazardous condition that would have given rise to a duty to light that particular street, it clearly established that there was no duty to light an otherwise safe street. *See id.* Moreover, even if the discussion in *Fishbaugh* could be construed as dicta, as Plaintiffs claim, the common law no-duty rule is well-established. *See Herndon v. Salt Lake City*, 95 P. 646, 652 (Utah 1908) ("As to the duty of the city to light its streets generally it may be said that no such duty exists at common law.").

¶18   Alternatively, Plaintiffs argue that this common law rule is archaic and should be abandoned. However, we are not at liberty to abandon a legal doctrine adopted by the Utah Supreme Court. *See Ortega v. Ridgewood Estates LLC*, 2016 UT App 131, ¶ 30, 379 P.3d 18 (noting that "we are bound by vertical stare decisis to 'follow strictly' the decisions rendered by the Utah Supreme Court" (citation omitted)).

¶19   Since a municipality does not have a duty to light an otherwise safe street, the question of whether Defendants owed

Plaintiffs a duty depends on whether there was a peculiar or hazardous condition making lighting necessary.

B.      No Dispute of Material Fact Regarding the Absence of Any Peculiar or Hazardous Condition

¶20    In the present case, there is no genuine issue of material fact as to whether a peculiar or hazardous condition existed that would require lighting to render the street safe for travel. The condition of the crosswalk at the time of the accident is undisputed. There were no "defects, obstructions, and unsafe places," that would have given rise to a duty to light the area. *See Fishbaugh*, 969 P.2d at 406 (citation and internal quotation omitted). Plaintiffs concede that the crosswalk "did not have any cracks, potholes, raised sections or other problems impeding" their ability to cross.

¶21    Although there is no dispute regarding the crosswalk's condition, Plaintiffs nonetheless argue that a question of material fact remains as to whether the location of the crosswalk itself was hazardous. Specifically, Plaintiffs contend that "[w]hether the heavy traffic, the width of the street, and the design, which funneled pedestrian traffic across Washington Boulevard just south of the Egyptian Theater, where an inoperative streetlight was, made Washington Boulevard in the middle of the 2400 block hazardous is a question for the jury to decide." In essence, the "hazardous condition" Plaintiffs identify is the placement of a mid-block crosswalk on a wide, heavily trafficked street.

¶22    If creating a crosswalk was sufficient to render an otherwise safe street hazardous, the exception would swallow the no-duty rule. As applied, a municipality would be required to assume the duty to install streetlights and ensure that they remained functional at all times whenever it established a crosswalk for the convenience of pedestrians. However, a crosswalk is "not dangerous in the abstract" and "does not constitute a peculiar condition rendering lighting necessary."

*Plattner v. City of Riverside*, 82 Cal. Rptr. 2d 211, 213 (Ct. App. 1999). Nor does the width of the street or volume of traffic constitute a defect or unusual condition that would give rise to a duty to light the area. *See Thompson v. City of New York*, 585 N.E.2d 819, 821 (N.Y. 1991) (holding that the plaintiff could not establish a hazardous condition on the basis of a burnt-out streetlight merely because the affected roadway "is large and at times busy—a condition which exists at many city intersections"). The mere placement of a crosswalk on a busy but otherwise safe street does not create a hazardous condition and therefore is insufficient to create a genuine issue of material fact.

¶23   The district court correctly granted summary judgment because there was "no material dispute as to the condition of the crosswalk at the time of the accident," and because there was "[n]o peculiar or dangerous condition at the crosswalk [that] rendered it hazardous and in need of lighting." In the absence of any disputed issues of fact, the district court correctly ruled as a matter of law that Defendants did not have a duty to light the street.

C.     No Broader "Assumed Duty"

¶24   Alternatively, Plaintiffs argue that, by installing streetlights along Washington Boulevard, Defendants undertook a broader duty to render services to pedestrians that it recognized were necessary to "prevent accidents and increase public safety." In *Fishbaugh*, the Utah Supreme Court rejected a similar argument that the city, "by simply undertaking to install the streetlights," assumed a broader duty to exercise reasonable care in their maintenance. 969 P.2d at 406. As in this case, the plaintiff in *Fishbaugh* based his argument on the Restatement (Second) of Torts section 323, which provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection

of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

  (a) his failure to exercise such care increases the risk of such harm, or

  (b) the harm is suffered because of the other's reliance upon the undertaking.

Restatement (Second) of Torts § 323 (Am. Law Inst. 1965).

¶25    The supreme court explained that liability under this section "is generally limited to instances where the failure to exercise reasonable care in the undertaking has placed the injured party in a worse position than he would have been in had the undertaking not occurred, or where the injured party relies on the undertaking." *Fishbaugh*, 969 P.2d at 407. In other words, where a city undertakes to illuminate an otherwise safe street, it must exercise reasonable care to avoid creating a danger that otherwise would not have existed, "such as where a streetlight is angled in such a way as to blind a driver or a pedestrian, or where a light post is neglected to such a degree that the structure itself creates a hazard." *Id.* Because there was no suggestion of reliance on the operation of the streetlight and the "lack of lighting did not put [the plaintiff] in a worse position than if the streetlights had never been installed," the court held that the city did not have a broader duty to maintain the lights. *Id.*

¶26    As in *Fishbaugh*, Plaintiffs cannot establish either that (1) Defendants' alleged failure to exercise reasonable care placed them in a worse position, or (2) they detrimentally relied on the streetlights.

¶27    First, the alleged failure to exercise reasonable care in repairing the streetlights did not increase the risk of harm to Plaintiffs. As we have explained, Defendants had no duty to light the street in the first instance. The failed repairs did not place Plaintiffs in a worse position than if the streetlights had never been installed. This is not a case where the alleged negligence created a danger that did not otherwise exist. For instance, if a defendant "negligently failed to repair a known defect in a light pole that fell on a pedestrian . . . [or] if a motorist were blinded by a misplaced street light," the streetlights would become an "instrument of harm" placing pedestrians and drivers in a worse position than if the lights had never been installed. *Turbe v. Government of the Virgin Islands*, 938 F.2d 427, 433 (3d Cir. 1991)*.* Here, the alleged negligence did not increase the risk of harm but merely resulted in the natural darkness that would have existed if Defendants had elected not to light the street in the first place.

¶28    Plaintiffs attempt to draw a distinction between a defendant "merely failing to repair a streetlight that goes out through no fault of [the defendant] and actually causing the streetlight to go out through [the defendant's] negligence." In other words, Plaintiffs argue that Defendants placed them in a worse position when they affirmatively caused "the lights that would have otherwise illuminated the crosswalk to go out."

¶29    "When protective services are performed negligently, the risk of harm to the beneficiary will always be greater than when those services are performed competently." *Id.* at 432. If we were to accept Plaintiffs' argument, "a defendant would potentially be liable every time he discontinued services necessary for the protection of others without providing notice." *Id.* Whether Defendants chose not to install streetlights, decided to turn them off to conserve resources, neglected to maintain them, or accidentally caused them to go out, the end result is the natural darkness of night that the Defendants had no duty to eliminate.

Restatement section 323(a) "applies only when the defendant's actions increased the risk of harm to the plaintiff relative to the risk that would have existed had the defendant never provided the services." *Id.*

¶30 An unsuccessful attempt to maintain streetlights is not fundamentally different from a complete failure to maintain them or from the decision not to install them in the first place. While one involves an affirmative act and the other involves an omission, Plaintiffs are merely deprived of a benefit that Defendants had no duty to provide. There is a distinction "between launching an instrument of harm and simply failing to be an instrument of good." *Blake v. Public Service Co. of N.M.*, 2004-NMCA-002, ¶ 14, 82 P.3d 960, 964. Here, the allegedly negligent repairs only withheld an instrument of good.[3]

¶31 Second, there is no evidence of detrimental reliance in this case. To show reliance, Plaintiffs must demonstrate that they "in some manner relied on the operation of the streetlight [forgoing] other protective actions, e.g., a pedestrian chooses a particular route home in reliance on the available street lighting when the pedestrian would have chosen a different route or a different means of transportation in the absence of lighting." *White*, 30 Cal. Rptr. 2d at 437. "This exception to the general rule of

---

3. Because the alleged negligence occurred during actual maintenance of the streetlights, this case is controlled by *Fishbaugh*'s holding that a municipality has no duty to install or maintain streetlights on an otherwise safe street. *See Fishbaugh v. Utah Power & Light*, 969 P.2d 403, 407 (Utah 1998). We are not confronted with, and therefore offer no opinion on, the question of whether a municipal actor that negligently disables a streetlight during actions that cannot be fairly categorized as installation or maintenance could be held liable for injuries caused by those actions.

nonliability anticipates a pedestrian who has taken a particular route based on the belief the route is lighted and does not discover otherwise until it is too late to take a different route." *Plattner*, 82 Cal. Rptr. 2d at 214. In this case, Plaintiffs could plainly see that the streetlights were not operating and had every opportunity to select a safer route, such as crossing at the intersection. In forgoing such protective action, Plaintiffs were not relying on the crosswalk to be properly lit because it was obvious that the streetlights were not operating before they entered the crosswalk.

¶32 Defendants' alleged negligence did not increase the risk of harm relative to the risk that would have naturally existed, and Plaintiffs cannot establish detrimental reliance on the presence of functioning streetlights. Therefore, the district court correctly held that Defendants had no assumed duty under section 323 of the Restatement.

CONCLUSION

¶33 We conclude that Defendants did not have a duty to provide lighting in the area of the crosswalk. The street did not contain any peculiar or hazardous condition necessitating lighting, the faulty repairs did not increase the risk of harm to the Plaintiffs, and the Plaintiffs did not reasonably rely on the streetlights to safely cross the street. Because Defendants owed no duty as a matter of law, the district court correctly granted summary judgment.

¶34 Affirmed.

_____