*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

RYAN SHAMI,

       Plaintiff-Appellee,

v

DENISE ANN RAMSEY, SPENCER LEO SMITH,
and AUTO-OWNERS INSURANCE COMPANY,

       Defendants,

and

DTE ENERGY COMPANY,

       Defendant-Appellant.

UNPUBLISHED
July 14, 2022

No. 356369
Washtenaw Circuit Court
LC No. 19-000807-NI

Before: GLEICHER, C.J., and GADOLA and YATES, JJ.

PER CURIAM.

To be held liable in negligence, a defendant must owe a legal duty to the plaintiff. Absent a duty, there can be no breach and no causation. The circuit court in this case failed to answer this critical introductory question. DTE Energy Company did not owe a duty to Ryan Shami to maintain its streetlights. We reverse the court's denial of DTE's motion for summary disposition and remand for dismissal of Shami's complaint against it.

## I. BACKGROUND

At approximately 10 p.m. on January 14, 2019, Spencer Smith struck Ryan Shami with his vehicle as Shami crossed East Huron Street in a marked crosswalk. East Huron Street is a four-lane road dividing the University of Michigan campus and a residential area. The crosswalk is not at an intersection; it is intended as a safe passage for pedestrians between two cross streets. At the crosswalk, there is a narrow, raised cement median. There are signs warning drivers of the pedestrian crosswalk as well as reflective tape strips in the crosswalk.

Shami initially filed suit against Smith, Smith's mother as the vehicle's owner, and his own no-fault insurer. On July 1, 2020, Shami filed an amended complaint adding a count against DTE Energy Company. Shami alleged that DTE "owned and operated a certain streetlight located adjacent to the crosswalk" that was not working at the time of the collision. Shami asserted that the streetlights along East Huron Street "had a lengthy history of problems and a poor record of reliability, leaving the subject light and others in the area frequently out of service," a problem that DTE "was aware of." "DTE had a duty to promptly repair its streetlights," Shami urged, a duty which it breached. The failure to repair the subject streetlight "burdened" pedestrians "with an unreasonable risk of being struck by motor vehicles."

During discovery, documentary evidence was presented supporting that DTE was on notice that certain streetlights along East Huron Street were out of service. Smith and another driver, Emma Abouksam, were deposed and described the dark condition of the area at the time of the accident. Smith had "noticed the general dark condition of that area prior to the night of this incident." Abouksam described the area as "poorly lit." The streetlight "hovering over the crosswalk on the eastbound lanes" was illuminated, but there was no corresponding streetlight on the westbound side where Shami was struck. The streetlight that was out of service was approximately "seven car lengths away, so about 35 yards from that crosswalk." Police photographs of the area on the night of the collision were also presented. However, Smith asserted that the photographs were "much brighter" than the actual conditions on the night in question, implying that an auto-adjust feature on the camera enhanced the illumination.

DTE subsequently sought summary disposition under MCR 2.116(C)(10). DTE contended that it did not owe a common-law duty to pedestrians to fix streetlights; rather, it owed a contractual duty to the city. Third parties could not file tort actions for a failure to perform under that contract, DTE asserted. Rather, to support a tort action, Shami would have to show that DTE created a new and dangerous condition during the performance of its contractual duties. DTE further asserted that other jurisdictions had addressed the issue and found no duty to third parties in relation to nonfunctional street lights. See *Vaughan v Eastern Edison Co*, 48 Mass App Ct 225; 719 NE2d 520 (1999) (compiling cases). And even if DTE owed Shami a duty of care, DTE contended that there were no factual questions regarding notice and causation to send to the jury.

Shami retorted that DTE did owe a common-law duty to him. "[O]nce Defendant undertook the duty to illuminate the roadway and crosswalk for the safety and protection of the public . . . it had an obligation to do so with due care," Shami asserted. Shami noted that DTE's Community Lighting Manager of Operations, Christopher Hartley, testified that DTE's own policies required repairs to be made within five days of a customer report. And Shami presented documentation that the city had notified DTE in mid-December 2018 that several streetlights along the relevant stretch of East Huron Street were out and were not repaired until well after this collision.

Shami continued by claiming that the Michigan Supreme Court "has stated that utility companies . . . owe a general duty to the public to maintain equipment in a reasonably safe condition. This would include maintaining lighting for public safety." Shami specifically cited *Schultz v Consumers Power Co*, 443 Mich 445; 506 NW2d 175 (1993), and *Laney v Consumers Power Co*, 418 Mich 180; 341 NW2d 106 (1983). Shami then cited administrative rules setting utility company standards of care in rectifying outages. Finally, Shami contended that DTE

misinterpreted caselaw limiting a third-party's cause of action against a defendant operating under a contract with another entity.

At the summary disposition hearing, DTE asserted that any duty it bore arose from its contract with the city of Ann Arbor and not from the common law. "The only question," DTE posited, was whether the contractual duty to maintain the streetlights "extends to the plaintiff." Shami, on the other hand, argued that there is "a common-law duty . . . when undertaking a task, to do so reasonably." The circuit court did not address the issue of duty, jumping instead to notice and causation. And the court found triable questions of fact on those issues:

> I think there is a material factual dispute, and I think I honed in on just that testimony and the fact that there was notice on it.
>
> As to you argument that a jury would have to speculate[,] I am, most of the time, the finder of fact, but I'm also with juries the finders of fact. We have to speculate all the time . . . . [W]e have to look at that evidence, circumstantial evidence, try to weigh it . . . .

Accordingly, the court ruled, "We'll let the jury decide."

This Court granted DTE's interlocutory application for leave to appeal. *Shami v Ramsey*, unpublished order of the Court of Appeals, entered May 17, 2021 (Docket No. 356369).

## II. ANALYSIS

We review de novo the circuit court's denial of DTE's summary disposition motion. *West v Gen Motors Corp*, 469 Mich 117, 183; 665 NW2d 468 (2003). Here, the circuit court erred by failing to make a crucial legal finding—whether DTE owed a legal duty to Shami—before addressing whether Shami created triable questions of fact regarding notice and causation. And as DTE did not owe a duty to Shami, the circuit court erred in failing to dismiss Shami's complaint against the utility company.

"It is axiomatic that there can be no tort liability unless defendants owed a duty to plaintiff." *Beaty v Hertzberg & Golden, PC*, 456 Mich 247, 262; 571 NW2d 716 (1997). "Whether a duty of care exists because of the relationship between the parties is a question of law that is solely for the court to decide." *Id*. (cleaned up).

> Every person engaged in the performance of an undertaking has a duty to use due care or to not unreasonably endanger the person or property of others. However, as a general rule, there is no duty that obligates one person to aid or protect another. Generally, the duty that arises when a person actively engages in certain conduct may arise from a statute, a contractual relationship, or by operation of the common law . . . . [*Hill v Sears, Roebuck & Co*, 492 Mich 651, 660-661; 822 NW2d 190 (2012) (quotation marks and citations omitted).]

Thus, a tort duty to an injured plaintiff may exist under any of three distinct scenarios: by statute, by contract intended to benefit the plaintiff specifically, and under the common law. None of those scenarios are present here.

Shami has cited no statutory duty owed by DTE to maintain the street lighting system in question. DTE undertook to provide street lighting in Ann Arbor under a contract with the city. The July 25, 2018 Master Agreement for Municipal Street Lighting provided that DTE would "furnish, install, operate and/or maintain street lighting equipment for Customer." The contract continues that DTE "shall provide the necessary maintenance of the Equipment, including such replacement material and equipment as may be necessary," and that "[u]pon installation of the Equipment, [DTE] will provide street lighting service to Customer under Option 1 of the Municipal Street Lighting Rate" tariff. Option 1 of the Municipal Street Lighting Rate tariff provides: "The Company will clean, inspect, operate and maintain street lighting equipment and furnish lamp replacements. Non-functional lights must be reported by the customer and the Company will replace the lights as soon as possible during regular working hours." (Cleaned up.)

Shami is not a party to the contract between DTE and the city. However, " 'accompanying every contract is a common-law duty to perform with ordinary care the thing agreed to be done, and that a negligent performance constitutes a tort as well as a breach of contract.' " *Fultz v Union-Commerce Assocs*, 470 Mich 460, 465; 683 NW2d 587 (2004), quoting *Clark v Dalman*, 379 Mich 251, 260-261; 150 NW2d 755 (1967). In *Fultz*, the Supreme Court outlined when a duty exists between a defendant and a plaintiff who is not a party to the contract: "the threshold question is whether the defendant owed a duty to the plaintiff that is separate and distinct from the defendant's contractual obligations. If no independent duty exists, no tort action based on a contract will lie." *Fultz*, 470 Mich at 467.

In determining whether an independent duty exists, the *Fultz* Court explained that "our courts have drawn a distinction between misfeasance (action) and nonfeasance (inaction) for tort claims based on a defendant's contractual obligations. We have held that a tort action will not lie when based solely on the nonperformance of a contractual duty." *Id*. at 465-466 (citations omitted). *Fultz*, 470 Mich at 466, turned to *Williams v Cunningham Drug Stores, Inc*, 429 Mich 495, 498-499; 418 NW2d 381 (1988), to describe "the nonfeasance/misfeasance dichotomy":

> "In determining standards of conduct in the area of negligence, the courts have made a distinction between misfeasance, or active misconduct causing personal injury, and nonfeasance, which is passive inaction or the failure to actively protect others from harm. The common law has been slow in recognizing liability for nonfeasance because the courts are reluctant to force persons to help one another and *because such conduct does not create a new risk of harm* to a potential plaintiff. Thus, as a general rule, there is no duty that obligates one person to aid or protect another." [Emphasis added.]

Answering the duty question has presented pitfalls for the courts of this state. In *Loweke v Ann Arbor Ceiling & Partition Co, LLC*, 489 Mich 157, 165-166; 809 NW2d 553 (2011), the Supreme Court provided further clarification:

> This Court . . . has recognized that determining whether an action in tort can arise out of a contractual promise is often largely semantic and difficult to discern. *Rinaldo's Constr* [*v Mich Bell Tel Co*, 454 Mich 65, 83; 559 NW2d 647 (1997)]; *Hart* [v *Ludwig*, 347 Mich 559, 564-565; 79 NW2d 895 (1956). In *Fultz*, a majority of this Court recognized the often "slippery distinction" between misfeasance and

nonfeasance of contractual obligations and attempted to disentangle the misfeasance/nonfeasance dichotomy by shifting the focus to whether the particular defendant owed a duty to the plaintiff. *Fultz*, 470 Mich at 467 (quotation marks and citation omitted). Noting that this Court had described a tort action arising from the misfeasance of contractual obligations as a " 'violation of a legal duty separate and distinct from the contractual obligation,' " the *Fultz* majority explained that this " 'separate and distinct' definition of misfeasance" offered better guidance in determining whether a negligence action based on a contract and brought by a third party could lie. *Id*., quoting *Rinaldo's Constr*, 454 Mich at 84. Accordingly, after *Fultz*, courts were to forgo the misfeasance/nonfeasance distinction and, instead, employ a " 'separate and distinct' mode of analysis" to determine the threshold question: "whether the defendant owed a duty to the plaintiff that is separate and distinct from the defendant's contractual obligations." *Fultz*, 470 Mich at 467; see, also, 1 Torts: Michigan Law and Practice (2d ed), § 10.18, p 10-24. Under this analysis, an action would lie in contract if it was based solely on a defendant's failure or refusal to perform a contractual promise. In contrast, an action could lie in either contract or tort if a "defendant negligently performs a contractual duty or breaches a duty arising by implication from the relation of the parties created by the contract . . . ." *Fultz*, 470 Mich at 469. In the latter category of cases, however, no tort liability would arise "for failing to fulfill a promise in the absence of a duty to act that is separate and distinct from the promise made." *Id*. at 470.

The take-away from the *Fultz/Loweke* duet is that an injured plaintiff may pursue a tort claim arising out of a contractual promise if the defendant engages in a wrongful *action*. By acting, a negligent defendant assumes a duty of care. That is not the case here.

Shami's complaint against DTE sounds in nonfeasance. He alleged that DTE failed to repair streetlights as required by its contract with the city. There is no precedent for imposing a general common-law duty on utility companies for the failure to repair a nonoperational streetlight.[1] Rather, to impose a common-law duty on a defendant to protect an unrelated third party, the defendant must have "create[d] a new risk of harm," *Williams*, 429 Mich at 499, or "a situation of peril has been created" by the defendant. *Hart*, 347 Mich at 565. This was the scenario

---

[1] In fact, the vast majority of jurisdictions that have addressed this issue have found no duty. See *Turbe v Gov't of the Virgin Islands*, 938 F2d 427 (CA 3, 1991); *Laprocina v Lourie*, 250 A3d 1281 (RI, 2021); *Estate of Flygare v Ogden City*, 2017 UT App 189; 405 P3d 970 (2017); *Louisville Gas & Elec Co v Roberson*, 212 SW3d 107 (Ky, 2006); *Blake v Pub Serv Co*, 134 NM 789; 82 P3d 960 (2003); *Vaughan*, 48 Mass App Ct 225; *White v Southern California Edison Co*, 25 Cal App 4th 442; 30 Cal Rptr 2d 431 (1994); *Kimmitt v Horton*, 26 Va Cir 462 (1990); *Shafouk v Bourgeois*, 493 So 2d 112 (LA Ct App, 1986); *East Coast Freight Lines, Inc v Gas, Electric Light & Power Co*, 187 Md 385; 50 A2d 246 (1946); *Quinn v Georgia Power Co*, 51 Ga App 291; 180 SE 246 (1935); *Cochran v Pub Serv Elec Co*, 97 NJL 480; 117 A 620 (1922). But see *Clay Elec Coop, Inc v Johnson*, 873 So 2d 1182, 1184 (Fla, 2003); *Todd v Northeast Utilities*, 40 Conn Supp 159, 159; 484 A2d 247 (1984).

in the cases cited by Shami—*Schultz*, 443 Mich 445, and *Laney*, 418 Mich 180. In *Schultz*, 443 Mich at 448-449, the plaintiff was injured while painting a house. The plaintiff alleged that Consumers Power Co "installed the wire dangerously close to" the home and that a "frayed wire allowed the electric current to 'arc' from the wire to the nearby ladder." *Id*. In *Laney*, 418 Mich at 181-182, the plaintiff alleged that Consumers Power Co failed to properly trim trees along the course of the power lines it installed. A child was fatally electrocuted when he climbed a tree and came into contact with an uninsulated power line. In both these cases, the defendant utility company owed a duty to third parties because it created a situation of peril—either actively improperly installing dangerous electrical lines or failing to properly maintain lines that carry a fatal electrical current.

Had Shami been electrocuted by streetlight equipment, there may be grounds to find a duty in this case. But there is nothing inherently dangerous about a streetlight. And DTE did not create a new peril by installing the streetlights or by failing to repair them. Absent a duty, no court could find DTE liable to Shami and the circuit court was required to dismiss Shami's negligence complaint against DTE.

We reverse and remand for dismissal of Shami's claim against DTE. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Michael F. Gadola
/s/ Christopher P. Yates